UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JOHN R.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:19-cv-00084-SEB-DML |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE and REMAND the decision of the Commissioner of the Social Security Administration that plaintiff John R. is not disabled.

**Introduction**

John applied in July 2015 for Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits under Titles II and XVI, respectively, of the Social Security Act. John's previous application for disability benefits was denied on January 11, 2013, and thus in this case, his alleged onset of disability is January

---

[1] To protect privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by his first name in this Report and Recommendation.

12, 2013. After a video hearing held on October 13, 2017, before Administrative Law Judge Aubri Masterson, the ALJ issued her decision on April 9, 2018, that John was not disabled at any time from January 12, 2013, through the date of her decision. The Appeals Council denied review, rendering the ALJ's decision for the Commissioner final. John timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

John contends that the ALJ erred in two ways. First, he contends that the ALJ's determination that John is limited to simple, routine, repetitive work does not necessarily capture his moderate limitations in "concentrating, persisting, or maintaining pace." Second, he contends that because the vocational expert did not express an opinion about whether the jobs he found were available in certain numbers nationally were also available in the region where he lives or several other regions of the country, the Commissioner necessarily failed to meet his burden at step five.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address John's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A). John is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is

a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,*

357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of his reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

John was born in 1972, was 40 years old at the alleged onset of disability on January 12, 2013, and was 46 years old at the time the ALJ issued her decision. John had worked over the years in factory jobs that required the capacity to lift and carry at a medium to heavy level of exertion. He had some earnings after his alleged onset of disability (about $4,300 in 2013, $8,200 in 2014, and $328 in 2015), but those earnings were not high enough to constitute substantial gainful activity, and thus he satisfied step one of the sequential analysis.

At step two, the ALJ determined that John's severe impairments were diabetes mellitus, obstructive sleep apnea, neuropathy, hypertension, degenerative disc disease of the lumbar spine, right hip osteoarthritis, COPD, emphysema, asthma, major depressive disorder, and anxiety. (R. 13). At step three, she found that no listings were met or medically equaled. John does not challenge the ALJ's step one through three findings.

For the RFC, the ALJ decided that John is capable of a modified range of light work. He can sit for six hours and stand and/or walk for four hours in a work

day, lift/carry/push/pull up to 20 pounds occasionally and up to 10 pounds frequently, occasionally climb ramps/stairs, balance, stoop, crouch, and kneel, and never crawl or climb ladders, ropes, or scaffolds. She also imposed certain environmental restrictions, prohibiting certain types of hazardous work activities and exposures to respiratory irritants and temperature extremes. Finally, the ALJ limited John to "simple, routine, and repetitive work." (R. 16).

Based on the RFC and the testimony of a vocational expert, the ALJ found at step four that John cannot perform his past relevant work. At step five, also based on the VE's opinion, she found that John can perform the requirements of (1) sorter, "of which there are 90,000 jobs nationally," (2) packer, "of which there are 150,000 jobs nationally," and (3) cleaner, "of which there are 100,000 jobs nationally." She thus determined that John was not disabled.

## II. John's Assertions of Error

John claims that the ALJ made two errors, each requiring remand. First, he argues that because the ALJ determined that John has a moderate limitation in concentrating, persisting, or maintaining pace, and because the ALJ did not specifically inform the VE about this moderate limitation and described John as capable of "simple, routine, and repetitive work," one cannot determine whether the jobs exclude those that John cannot perform. Second, he argues that even if this alleged error does not require remand, the ALJ erroneously relied on the VE's opinion about the availability of jobs "nationally," as opposed to whether and the extent to which they are available in a region or several regions of the country.

### III. The court cannot determine whether John's difficulty with concentrating, persisting, or maintaining pace is consistent with the jobs the VE opined that he can do.

The ALJ determined that John suffers from two severe mental impairments (major depressive disorder and anxiety), and she accepted that his physical impairments cause him pain. She determined that John's combination of impairments cause a moderate limitation in concentrating, persisting, or maintaining pace. *See* R. 10 and R. 16. She also determined that an appropriate RFC to capture these limitations—though she did not specify whether John's limitations were in concentrating, persisting, *or* maintaining pace, or in all or some subset of these activities—was work that is simple, routine, and repetitive. (*Id.*).[2] She did not rely on any medical opinion to reach this conclusion.[3]

John contends that the ALJ's decision presents a paradigmatic *O'Connor-Spinner* error. *See O'Connor-Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010). The court must agree because there is nothing within the ALJ's decision, or within her hypothetical to the vocational expert, that rationally explains how a restriction to simple, routine, repetitive work adequately accommodates John's particular deficits.

---

[2] It is unclear the extent to which the ALJ determined that John's mental impairments contributed to his difficulties with CPP. In deciding his mental impairments were severe, she observed that difficulties with CPP were what made them severe (R. 15-16, deciding he was only mildly limited in the other broad areas of functioning), but also stated that she limited him to simple, routine work because of his "combination of impairments, distraction, and mild mental impairment rather than because of a severe mental impairment." (R. 10).

[3] The ALJ reviewed the report from a consultative psychological exam, found it worth "partial" weight, and noted that it "gave no real limitations." (R. 20).

7

Indeed, as noted, one cannot tell from the ALJ's decision whether she determined that John's deficit was with concentration, persistence, or maintaining pace, or some combination of the three. The ALJ did note that her conclusion about John's moderate deficit is at least based on his function report in which he described difficulty with completing tasks, but one cannot tell whether that difficulty stems from concentration, persistence, or pace problems. Her decision also indicates that John suffers from "distraction" (R. 10), but here again one cannot determine if that distraction interferes mostly with concentration, the ability to persist, or the ability to maintain a proper pace of work, or some combination. And if one determines that distraction at least suggests John will be off task for some period of time, thus interfering with his ability to persist and thus perhaps work at a required pace, there was nothing in the hypothetical to the VE to alert him that his jobs opinion must account for some period that John could not persist and would be off task.

Beginning with *O'Connor-Spinner*, followed by numerous other published decisions by the Seventh Circuit, the court has been clear that when an ALJ determines that a claimant is moderately limited in concentration, persistence, or pace, and the ALJ assigns work that is simple, routine, and repetitive, the decision must contain some rationale to explain how that simple work accommodates the claimant's particular limitations. *See, e.g., Martin v. Saul,* 950 F.3d 369, 374 (7th Cir. 2020) (finding that ALJ specifically addressed whether and how the RFC accounted for the claimant's particular difficulties in each area of concentration, persistence, and maintenance of an appropriate pace of work); *Crump v. Saul,* 932

8

F.3d 567, 571 (7th Cir. 2019) (ALJ's RFC "did not say enough" to address the claimant's limitations to ensure she "could maintain the concentration and effort necessary to function in a workplace. . . .")

Because the link between John's difficulties and simple, routine, repetitive work is missing here, and the court cannot determine that the jobs the ALJ found John can do are consistent with his particular deficits, reversal and remand is required.

**IV. The court rejects John's contention that opinions about the "national" availability of jobs can never satisfy the Commissioner's burden at step five.**

For completeness, the court also addresses John's second contention of error.

Under both Titles II and XVI, if an individual is not able to do his previous work *and* cannot "engage in any other kind of substantial gainful work which exists in the national economy," he is disabled. *See* 42 U.S.C. § 423(d)(2)(A) (Title II); 42 U.S.C. § 1382c(a)(3)(B) (Title XVI). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* The Agency's implementing regulations repeat this statutory language and also explain:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered *work which exist in the national economy*. We will not deny you disability benefits on the basis of the existence of these kinds of jobs.

20 C.F.R. § 416.966(b) (emphasis in original).

Because the statute and regulations refer to work existing "in the region" where the claimant lives or in "several regions" of the country, John argues that an ALJ can determine whether the statutory requirement is met *only* if a vocational expert provides jobs information based on a "region" or "regions" basis. Thus, according to John, if a vocational expert provides jobs information on a national basis only and there is no other evidence about jobs in a region where the claimant lives or other regions, then a finding of disability cannot stand. But neither the statute nor implementing regulations actually say that jobs information expressed on a national basis cannot provide the required substantial evidence to support a finding that significant jobs exist consistent with the statute and regulations. An ALJ's findings must only be supported by "substantial evidence," meaning evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001).

In this case, the types of jobs and their numbers in the national economy, according to the VE (and adopted by the ALJ), are so common and so large that a reasonable person would accept that they either exist in John's region or in several regions of the country. Jobs as a "sorter," "packer," or "cleaner" rationally can be considered ubiquitous, and according to the VE, there are 90,000, 150,000 and 100,000, respectively, of these jobs in the country. That's 340,000 available jobs. A reasonable person would accept that they are not the type of "isolated" jobs existing in "few locations" and in "very limited numbers" as the regulations explain, but

rather that there are a significant number of them available either in the claimant's region or at least several regions of the country.

The two cases upon which John relies do not detract from the above analysis. One of them, *Jesus F. v. Saul,* 2019 WL 6872815 (S.D. Ind. Dec. 16, 2019), relies on the other, *Schadenfroh v. Colvin,* 2014 WL 1260123 (S.D. Ind. Mar. 27, 2014). In *Schadenfroh,* the ALJ relied on job numbers presented both at the State of Indiana level and on a national level. Though the court stated that only the state information was relevant because "job numbers shall be judged based on less than the national totals," *id.* at *11, the job numbers on the state level indicated their isolated nature and very limited numbers: only 117 of one job and 125 of another in the entire state of Indiana.[4] The 242 total jobs in the state—the court found—could not possibly amount to a significant number of jobs. *Id.* at *12-13. The *Schadenfroh* court did not address a factual situation remotely like that present here, where the VE's jobs numbers are expressed on a national level only and exist in the hundreds of thousands. And *Jesus F.,* which relied on *Schadenfroh,* noted that "undoubtedly" if the ALJ relied on testimony that at least 300,000 jobs existed nationally, the testimony would satisfy the statutory requirements. *Jesus F.,* 2019 WL 6872815 at *8 (S.D. Ind. Dec. 16, 2019).

Moreover, in the court's experience, it has been commonplace for several years for vocational experts in Social Security disability cases to express their jobs

---

[4] The third job could not be performed consistent with the claimant's RFC. *See* 2014 WL 1260123 at *10-11.

11

numbers on a national basis only, a departure from VE testimony in earlier years (such as at the time of *Schadenfroh)* to express jobs numbers on a state *and* national basis. Accepting John's argument that national numbers never supply substantial evidence of the existence of jobs would mean that nearly every disability denial decision over the last several years is subject to remand on that basis alone. The court is not aware of any decision that holds as such.

Based on the foregoing reasons, the court rejects John's argument that when jobs numbers are expressed on a national basis only, they never provide substantial evidence for the conclusion that jobs exist "in the national economy" in the "region" where the claimant lives or in "several regions" in the country, no matter the jobs' apparent ubiquity—hundreds and hundreds of thousands of them—available in the country.

## **Conclusion**

For the foregoing reasons, the Magistrate Judge recommends that the District Judge reverse and remand under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that John was not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: October 14, 2020

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system